UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 29, 2025

LETTER TO ALL COUNSEL OF RECORD

Re: *Laura G. v. Frank Bisignano, the Commissioner of Social Security*[1]
    Civil No. 24-02709-CDA

Dear Counsel:

On March 31, 2025, Plaintiff Laura G. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 7) and the parties' briefs (ECFs 12, 13 and 16). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on September 12, 2019, alleging a disability onset date of May 7, 2019. Tr. 1006. Her claim was denied initially and on reconsideration. Tr. 1. On September 23, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 39. Plaintiff was denied benefits, and after exhausting all administrative remedies, filed for judicial review. Tr. 1065. On February 28, 2023, the Court remanded the case to the Commissioner for further administrative proceedings in accordance with sentence four of section 405(g) of the Social Security Act. 42 U.S.C. § 405(g); Tr. 1067. Among reasons for remand were the ALJ's failure to reckon with how some of Plaintiff's symptoms may affect her ability to "sustain tasks over time," as well as providing inadequate explanation as to why "no further limitation is needed beyond a limit to 'simple routine tasks.'" Tr. 1073. The appeals council then vacated the ALJ's final decision and remanded the case to an ALJ for further

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on September 19, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

proceedings consistent with the order of the Court. Tr. 1074. On May 8, 2024, an ALJ held a hearing. Tr. 1006. On June 11, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 1007. Plaintiff filed this second action for judicial review. ECF 1.

## II.   THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 7, 2018, through her date last insured of December 31, 2023." Tr. 1009. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Degenerative Disc Disease of the Cervical and Lumbar Spine; Cervical Radiculopathy; Traumatic Brain Injury with Mild Neurocognitive Disorder; Post Concussive Syndrome; Benign Paroxysmal Positional Vertigo; Irritable Bowel Syndrome; Obesity and Adjustment Disorder with Depressed Mood." Tr. 1009. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "Vitamin D deficiency and mild sensorineural hearing loss."[3] Tr. 1009. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1009. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work, as defined in 20 CFR 404.1567(b), except that she can frequently climb ramps and stairs, but can never climb ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can frequently reach overhead, bilaterally. The claimant can work in an

---

[2] 42 U.S.C. §§ 301 et seq.

[3] The ALJ also noted that the Plaintiff reported daily headaches due to her traumatic brain injury and concussion, but that they improved with medication. Tr. 1009. Plaintiff, however, was not diagnosed with a primary headache disorder, thus the ALJ treated the headaches as symptoms of the underlying severe impairments of traumatic brain injury and post-concussive disorder. Tr. 1009.

> environment with a moderate noise level. The claimant can never work at unprotected heights or around moving, mechanical parts. The claimant can understand and remember simple instructions and can maintain attention, concentration and persistence to carry out simple instructions. The claimant cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. The claimant can use judgment to make simple, work-related decisions. The claimant can frequently interact with supervisors and coworkers and can occasionally interact with the general public. The claimant can deal with infrequent changes in a routine work setting.

Tr. 1013. The ALJ determined that Plaintiff was unable to perform past relevant work as a cook and a waitress (DOT[4] # 315.361-014 and # 311.477-014) but could perform other jobs that existed in significant numbers in the national economy. Tr. 1026-27. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1028.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] … as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff argues on appeal that the ALJ's decision lacks the support of substantial evidence and fails to apply the proper legal standards when reviewing the RFC. ECF 12 at 11. Specifically, Plaintiff contends that the RFC is unsupported because the ALJ did not assess her work-related exertional activities on a function-by-function-basis as set forth in paragraph b of 20 C.F.R.

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

404.1545, thus violating SSR 96-8p. ECF 12, at 13-14. Defendant counters that the ALJ was not required to perform a specific function-by function assessment because the ALJ "sufficiently explains[s] [their] conclusions" and "use[s] evidence from the record to explain" the RFC finding. ECF 13, at 7 (citing *Ladda v. Berryhill*, 749 F. App'x 166,172 (4th Cir. 2018)) (alterations in original).

After carefully reviewing the record, the Court determines that the ALJ erred in assessing Plaintiff's RFC. A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling ("SSR") 96-8p, an RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. § 416.945(b); see SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work that the ALJ believes the claimant can perform. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). As *Dowling* explains, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." 986 F.3d at 387 (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff argues that the ALJ's decision lacked a function-by-function analysis of the material work related to functions necessary to perform "light work as defined in 20 C.F.R. 404.1567(b)." ECF 12, at 13. Plaintiff also argues that that the ALJ mischaracterized evidence of record, omitted material evidence, and did not reconcile conflicting evidence. ECF 16 at 3-4.

The Court agrees that the ALJ committed reversible error by failing to explain how the evidence supports the RFC's implicit conclusion regarding Plaintiff's ability to lift, carry, walk, stand, push, or pull at a light exertional level. Here, the ALJ relied predominately on medical opinions and prior administrative medical findings. Tr. 1013. The ALJ broke the evaluation into two parts: physical impairments and mental impairments. For physical impairments, the ALJ first considered the Prior Administrative Findings of state agency medical consultants, Dr. Lisa Venkataraman and Dr. A.R. Totoonchie. Tr. 1022. Dr. Venkataraman found that Plaintiff could "perform light work with frequent stooping, crawling, and climbing ladders, ropes, or scaffolds and frequent right overhead reaching." Tr. 1022. Dr. Venkataraman, however, did not "review all of the medical evidence of record which supports more restrictive postural and additional limitations.". Tr. 1022. The ALJ found Dr. Venkataraman's opinion was "somewhat persuasive." Next, the ALJ considered Dr. Totoonchie's opinion, which he reached after examining a larger portion of the Plaintiff's medical records. Tr. 1022. Like Dr. Venkataraman, Dr. Totoonchie found that Plaintiff is capable of light work and retains normal strength, sensation, and gait. In

reaching this conclusion, Dr. Totoonchie considered Plaintiff's complaints of pain with range of motion and occasional dizziness. Tr. 1022. The ALJ found Dr. Totoonchie's opinion was only "partially persuasive."

Also on the matter of physical impairments, the ALJ evaluated the opinion of consultative examiner Dr. Bamba. Tr. 1023. Dr. Bamba found that Plaintiff had a limitation in standing and walking but could stand and walk frequently in an 8-hour workday. *Id.* The ALJ found this part of his opinion persuasive but found the rest of his opinion vague and inconsistent with other examinations because it did not include any nonexertional limitations on Plaintiff's ability. *Id.*

Next, the ALJ evaluated Plaintiff's mental impairments. Tr. 1024. The ALJ first considered the Prior Administrative Finding of state agency medical consultant Dr. S. Durrthy. Dr. Durruthy concluded that Plaintiff has "moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace ("CPP") and a mild limitation in the area of adapting and managing oneself. Tr. 1025. Despite this opinion being "somewhat persuasive," the ALJ found that the combination of the Plaintiff's impairments was no more than a "moderate limitation." *Id.* Dr. Durrthy also concluded that the Plaintiff has a limited ability to sustain concentration, persistence, and pace for complex tasks but would fare better with simple tasks. *Id.* The ALJ found that this aspect of Dr. Durrthy's opinion not persuasive because "some of the language used [was] not vocationally defined." Tr. 1025. The ALJ also considered the opinion of consultative examiner, Leigh S. Knotts, Psy.D, finding it "somewhat persuasive." Tr. 1026. Dr. Knotts concluded that Plaintiff's "[m]ood symptoms may interfere with her ability to initiate tasks or sustain tasks over time [and] [c]oncentration problems may interfere with [Plaintiff's] ability to complete complex tasks." *Id.* Despite finding Dr. Knotts' opinion "somewhat persuasive[,]" the ALJ deemed it "not inherently valuable or persuasive in determining the above residual functional capacity." *Id.*

The Court agrees with Plaintiff that the ALJ's RFC lacks the support of substantial evidence. The evidence relied upon by the examiners and the ALJ is incomplete, and the opinions rendered from the incomplete evidence are inconsistent. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking* or standing[.]" 20 C.F.R. § 404.1567(b) (emphasis added). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). Here, the ALJ limited Plaintiff to performing light work "in an environment with a moderate noise level" with restrictions on working at "unprotected heights, or around moving, mechanical parts[,]" and in work that "require[es] a specific production rate[.]" Tr. 1031. The ALJ, however, did not consider that since the state examinations were taken, the Plaintiff has complained to her primary care provider about knee pain, back pain, lower leg swelling, and dizziness. The ALJ did not provide an explanation for this incongruity. *See* Tr. 1018. Moreover, the ALJ provided no analysis that would permit the Court to understand how they ultimately determined that Plaintiff, in light of her mental

impairments, could perform the mental requirements of light work.[5] Because the inconsistencies and omissions between the ALJ's analysis and the RFC "frustrate meaningful review" of the ALJ's decision, remand is "appropriate." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

The potential harm for this error is palpable due to the conflicting record evidence surrounding Plaintiff's knee, back, and now leg pain, as well her mental impairments. The ALJ made inconsistent findings on these points. In two instances, the ALJ noted that an examination classified the Plaintiff's gait as "abnormal." Yet, the ALJ did not attempt to reconcile this evidence with other opinions that classified her gait as normal or explain why one conclusion was more credible than the other. Tr. 1017, 1019. In another instance, the ALJ noted that Plaintiff did not report her leg swelling to her providers but later commented that Plaintiff used a compression pump since 2002 to help with the swelling, citing as evidence the Plaintiff's outpatient hospital records. Tr. 1019; ECF 7-19.

The ALJ's findings regarding the Plaintiff's mental incapacities are also inconsistent. In some instances, the ALJ noted that Plaintiff has mild concentration and memory problems and suffers from depressive episodes. *See* Tr. 1024 ("[A]t the consultative examination, memory abilities were in the borderline to low average range[.]"); Tr. 1025 ("I find that her mental symptoms would cause some concentration difficulties . . . which support the moderate limitations in the areas of understand, remember or apply information and concentrate persist, or maintain pace."). The ALJ's narrative, however, did not explain how the RFC's limitations to accommodate the Plaintiff's concentration or other mental difficulties (or why no such accommodation was necessary despite the existence of these moderate mental limitations). SSA regulations require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Because the ALJ's evaluation of this evidence "was internally inconsistent," and there appears to be no reconciliation of these inconsistencies, the Court's ability to trace the ALJ's reasoning is impeded, making remand necessary. *Rodney G. v. Kijakazi*, No. 22-3007-BAH, 2023 WL 6465436, at *4 (D. Md. Oct. 3, 2023) (citing *Mallett v. Berryhill*, No. 18-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019)).

---

[5] When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Here, the ALJ did not engage in such analysis, thus neither expressly accounting for such limitation nor explaining why no limitation exists.

*Laura G. v. Bisignano*
Civil No. 24-02709-CDA
September 29, 2025
Page 7

The Fourth Circuit has declined to adopt a *per se* rule requiring remand when an ALJ fails to perform an explicit function-by-function analysis. *See Mascio*, 780 F.3d at 636. However, when a function is "critically relevant to determining [a claimant's] disability status," remand for failure to perform such an analysis is appropriate. *Dowling*, 986 F.3d at 389. Had the ALJ properly evaluated Plaintiff's current physical and mental ailments, they may have found Plaintiff to possess greater limitations in the RFC that, in turn, could have altered the ultimate disability determination in this case. Thus, remand is warranted. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

### V.  CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge